# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID KACZMAREK,

    Plaintiff,

        v.

COUNTY OF LACKAWANNA TRANSIT SYSTEM, and LINDA MATYLEWICZ, in her individual capacity,

    Defendants.

CIVIL ACTION NO. 3:17-CV-00950

(JUDGE CAPUTO)

## **MEMORANDUM**

Presently before this Court is Defendants' Motion to Dismiss (Doc. 7) Plaintiff's Complaint (Doc. 1) in its entirety. Because Plaintiff has sufficiently pled the *prima facie* elements of a retaliation claim under the Family Medical Leave Act ("FMLA"), Count I of Plaintiff's Complaint will not be dismissed. Further, Count II of Plaintiff's Complaint will not be dismissed because Defendants have not provided evidence to suggest that the County of Lackawanna Transit System is a local agency as opposed to a Commonwealth agency, and thus Defendants are not immune from suit.

## I. Background

### A. Factual Background

The well-pleaded facts as set forth in Plaintiff's Complaint are as follows:

Plaintiff David Kaczmarek ("Plaintiff") has been an employee of Defendant County of Lackawanna Transit System ("COLTS") for over nine years. During that time he had "an unblemished work history." (Compl. ¶ 1.) Defendant COLTS is a municipal entity, which during the relevant time of this action employed Defendant Linda Matylewicz as its Director of Human Resources.

Plaintiff first requested intermittent leave under the FMLA on March 16, 2016 because he was suffering from: (1) a lumbar disc disease; (2) lumbar radiculopathy; (3)

lumbar myofascial pain syndrome; (4) chronic nonmalignant pain syndrome; and (5) migraines. His FMLA certificate related to this request was denied on March 21, 2016 when Defendant Matylewicz noted that she was unable to read the information provided by Plaintiff's doctor. Following the denial of Plaintiff's FMLA certificate, Plaintiff was scheduled to undergo a physical exam administered by the Department of Transportation ("DOT"). Plaintiff complied with the examination even though he was not due for such an exam until August of 2016. After completing the DOT examination, Plaintiff's FMLA certification was approved. Notably, the certification that was ultimately approved covered the same conditions that were set forth in the initial certification that was denied on March 21, 2016.

On August 26, 2016, Plaintiff took FMLA leave to pursue back treatment. Plaintiff subsequently obtained treatment and provided Defendants with a return to work notice on September 2, 2016. The return to work notice was completed by Plaintiff's personal doctor and the doctor used by Defendant COLTS. Due to the Labor Day holiday, Plaintiff was scheduled to return to work on September 6, 2016. Plaintiff did not misuse his FMLA leave.

On or about September 2, 2016, Plaintiff alleges that Defendants hired a private investigation firm ("PI firm") to surveil him and his family. Defendants provided the PI firm with confidential and private information to support its investigation.[1] The investigation and surveillance continued after Plaintiff returned to work. Specifically, Plaintiff claims that the private investigation firm "peek[ed] into [his] personal windows of his home. . . stalk[ed] and viedo tape[d] his family members, and research[ed] his personal off-duty habits." (Compl. ¶ 26.)

**B. Procedural History**

Based on the foregoing facts, Plaintiff filed a two-count complaint on June 6, 2017

---

[1] Plaintiff offers no averment regarding the substance of the information provided. It is unclear whether the information provided would have actually been of a confidential nature.

2

claiming that Defendants unlawfully retaliated against him in violation of the FMLA (Count I), and that Defendants invaded his privacy in violation of state law (Count II). Defendants filed a Motion to Dismiss Plaintiff's Complaint on June 15, 2017 and a brief in support of its Motion on June 27, 2017. Plaintiff responded to Defendants' Motion with a Brief in Opposition on June 28, 2017. Defendants have not filed a Reply to Plaintiff's Brief in Opposition.

This matter has been fully briefed and is ripe for disposition.

## II. Legal Standard

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "Under the 'notice pleading' standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014) (quoting Fed. R. Civ. P. 8(a)(2)).

When resolving a Rule 12(b)(6) motion, "a court must consider no more than whether the complaint establishes 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements' of the cause of action." *Trzaska v. L'Oreal USA, Inc.*, 865 F. 3d 155, 162 (3d Cir. 2017) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)). In reviewing the sufficiency of a complaint, a court must take three steps: (1) identify the elements of the claim; (2) identify conclusions that are not entitled to the assumption of truth; and (3) assume the veracity of the well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief. *See Connelly*, 809 F.3d at 787 (citations omitted).

3

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

### III. Discussion

**A. Count I: Retaliation under the FMLA**

Defendants seek dismissal of Count I of Plaintiff's Complaint which alleges that Defendants violated the FMLA's anti-retaliation provision

The FMLA was enacted "to 'balance the demands of the workplace with the needs of families,' and 'to entitle employees to take reasonable leave for medical reasons . . . in a manner that accommodates the legitimate interests of employers.'" *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 140-41 (3d Cir.2004) (quoting 29 U.S.C. § 2601(b)(1), (b)(3)). To that end, the FMLA allows covered employees to take as many as twelve weeks of leave from work as a result of a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. §2612(a)(1)(D). Pursuant to the FMLA, employers are prohibited from retaliating against employees who take full advantage of the benefits afforded by the FMLA. *See* 29 U.S.C. § 2615.

In order to establish "a retaliation claim under the FMLA, a plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 303 (3d Cir. 2012) (*citing Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508-09 (3d Cir. 2009)). Here, there is no question that Plaintiff has pled that he properly invoked his right to FMLA leave. Thus, the focus of this Court's inquiry will be whether Plaintiff has pled an adverse employment

4

decision that was causally related to his FMLA leave.

The Supreme Court has clarified the definition of an "adverse employment action" in the context of Title VII of the Civil Rights Act of 1964. *See Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 67-68 (2006). In *Burlington Northern & Santa Fe Railway Co. v. White* the Supreme Court stated:

> *The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm . . . In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from [engaging in protected activity].*

548 U.S. at 67-68. A number of courts, including courts within the Third Circuit[2], have applied this definition of "adverse employment action" to retaliation claims under the FMLA. *See, e.g.*, *Millea v. Metro-North R.R.*, 658 F.3d 154, 164 (2d Cir. 2011) (applying the Burlington Northern definition of an "adverse action" to actions under the FMLA); *Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 n.2 (10th Cir. 2006) (same); McArdle v. Dell Prods., L.P., 293 Fed. App'x. 331, 337 (5th Cir. 2008) (per curiam) (same);

---

[2] It is important to note that the Third Circuit has not yet decided whether to apply the standard for "adverse employment action" promulgated in the Title VII context by *Burlington Northern*. *See Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 257 n.6 (3d Cir. 2014) (noting that the Third Circuit has not concluded that the *Burlington Northern* definition applies in the context of an FMLA claim); *Kasper v. County of Bucks*, 514 Fed. App'x. 210, n.5 (discussing the more restrictive definition utilized in the Circuit prior to *Burlington Northern*). *But see Wells v. Retinovitreous Assocs.*, No. 16-2962, 2017 WL 3271598, *6 n.14 (3d Cir. Aug. 1, 2017) (explaining that the District Court should have applied the *Burlington Northern* standard); DiCampli v. Korman Cmtys., 257 Fed. App'x. 497, 500-01 (3d Cir. 2007) (applying the *Burlington Northern* standard for "adverse action" to the FMLA); *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006) (explaining that the Circuit's more restrictive standard for retaliation claims under Title VII was displaced by *Burlington Northern*.)

*Burton v. Pa. State Police*, 990 F. Supp 2d 478, 509 (M.D. Pa. 2014) (Rambo, J.) (same); *Grosso v. Fed. Express Corp.*, 467 F. Supp. 2d 449, 458 (E.D. Pa. 2006) (same). In other words, "[f]or purposes of the FMLA's anti-retaliation provision, a materially adverse action is any action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising his legal rights." *Millea*, 658 F.3d at 164.

Here, Plaintiff alleges that he suffered an adverse employment action under the FMLA as the subject of surveillance orchastrated by his employer. Defendants disagree and argue that surveillance does not amount to an adverse action absent a denial of benefits or an impact on the terms of Plaintiff's employment. Plaintiff is correct. When applying the *Burlington Northern* definition of "adverse employment action" courts have held that secretive surveillance of an employee may constitute an adverse employment action sufficient to support a claim of retaliation. *See, e.g.*, *Fercello v. County of Ramsey*, 612 F.3d 1069, 1081 (8th Cir. 2010) ("[P]lacing an employee under constant surveillance could be evidence of retaliation."); *Cichonke v. Bristol Twp.*, No. 14-4243, 2015 WL 8764744, *19 (E.D. Pa. Dec. 14, 2015) ([I]t is possible that a reasonable jury could find that such [surveillance] was an adverse employment action.")*; Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*, 746 F. Supp. 2d 575, 597 (S.D.N.Y. 2010) ("[T]here is nothing unreasonable about the jury's concluding that secret surveillance by an employer well might . . . dissuade a reasonable employee from continuing to" engage in a protected activity); *Bind v. City of New York*, No. 08-11105, 2011 WL 4542897, *10 (S.D.N.Y Sept. 20, 2011) (noting that even if an employee is unaware of surveillance, the fact that the employee was under surveillance may constitute an adverse employment action). As any reasonable person may suspect, if an employer hires private investigators to surveil an employee on FMLA leave, employees would likely be "dissuaded from exercising their legal right" to benefit under the FMLA in an attempt to avoid such surveillance. *Millea*, 658 F.3d at 164; *see also Mira v. Media*, No. 15-9990, 2017 WL 1184302, *7 (S.D.N.Y. Mar. 29, 2017) ("[I]t is not difficult to imagine that retaliatory stalking and surveillance might intimidate a reasonable employee and dissuade her from complaining about discrimination.").

In the instant action, the surveillance alleged is particularly troubling because it was not limited solely to the workplace. Rather, the surveillance extended to Plaintiff's private life; investigators allegedly captured video of Plaintiff's family and peered into the windows of Plaintiff's home. Because Plaintiff has sufficiently pled that Defendants' surveillance served as an adverse employment action, the second element of the *prima facie* case for retaliation is satisfied for the purpose of determining plausibility under FED. R. CIV. P. 12(b)(6).

Further, Plaintiff has sufficiently alleged that an adverse action was causally connected to the invocation of his rights under the FMLA. "The requisite causal connection can be established by (1) temporal proximity between the protected activity and the adverse employment action, (2) circumstantial evidence of a 'pattern of antagonism' following the protected conduct, or (3) where the proffered evidence, looked at as a whole, suffices to raise the inference." *Innella v. Lenape Valley Found.*, 152 F. Supp. 3d 445, (E.D. Pa. 2015) (quoting *Kachmar v. Sungard Data Sys.*, 109 F.3d 173, 177 (3d Cir. 1997)). "When the temporal proximity between the protected activity and adverse action is 'unduly suggestive,' this is sufficient standing alone to create an inference of causality." *Lichtenstein*, 691 F.3d at 307 (citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007)). Here, the alleged retaliatory conduct–namely the surveillance of Plaintiff–began roughly eight days after Plaintiff t ook FMLA leave. Taken alone, this allegation supports the inference that the alleged adverse employment action alleged was caused by Plaintiff's decision to take FMLA leave. *See, e.g.*, *id.* (finding an adverse action taken seven days after the invocation of FMLA leave was "unduly suggestive"); *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283 (6th Cir. 2012) (three weeks was "unduly suggestive"). Further, Plaintiff has pled facts that support a finding of a "pattern of antagonism." For example, Plaintiff claims that after making a request for FMLA leave, Defendants "made disparaging comments about Plaintiff and his need for FMLA leave." (Compl. ¶ 13.) Additionally, this

Court believes that the 14-day surveillance of Plaintiff at his private residence also amounts to a "pattern of antagonism." Thus, Plaintiff has sufficiently pled causation to survive the instant Motion to Dismiss.

Plaintiff has sufficiently pled the *prima facie* case for a retaliation claim under the FMLA. Therefore, Count I of Plaintiff's Complaint will not be dismissed.

**B. Count II: Invasion of Privacy**

The Political Subdivision Tort Claims Act ("Tort Claims Act") provides municipalities, local agencies, and their employees with immunity for tort liability. 42 Pa. C.S.A. § 8541. Here, Defendants argue that they are covered under the Tort Claims Act, and therefore are immune from suit for a claim of invasion of privacy. It follows that if immunity is provided Defendants' Motion to Dismiss should be granted.

Specifically, the Tort Claims Act states: "Except as otherwise provided in this subchapter, no *local agency* shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any person." 42 Pa. C.S.A. § 8541. (emphasis added). Thus, whether an agency is considered a local or Commonwealth agency is dispositive to the question of immunity under the Tort Claims Act. Notably, this immunity does not cover "acts or conduct which constitutes a crime, actual fraud, actual malice or willful conduct." 42 Pa. C.S.A. § 8542(d).

Defendants claim that COLTS is a local agency entitled to immunity for two reasons. First, Defendants argue that COLTS was created under the Municipalities Authorities Act, and as such should be designated as a local agency. Defendants cite no authority to support this contention. Even if such a proposition were true, Defendants have provided no evidence that COLTS was incorporated under the MAA.[3] Further, it is not immediately clear

---

[3] Defendants could have attached the certificate of incorporation indicating it was formed under the MAA. *Am. Corp. Soc. v. Valley Forge Ins. Co.,*

8

that incorporation pursuant to the MAA warrants designation as a "local agency" for immunity purposes.[4] The Supreme Court of Pennsylvania has opined that an authority created under the MAA "is not the creature, agent, or representative of the municipality organizing it." *Simon Appeal*, 184 A.2d 695, 697 (Pa. 1962). Second, Defendants argue that similar transportation authorities have been provided immunity under the Tort Claims Act. For example, Defendants cite *Gloffke v. Robinson,* 812 A.2d 728 (Pa. Cmwlth. Ct. 2005), for the proposition that transportation authorities are classified as "local agencies." But, what Defendants fail to acknowledge is that in *Gloffke* the parties agreed that the transportation authority at issue was a "local agency." 812 A.2d at 732. That is not the case here. Additionally, Defendants cite *Smith v. Endless Mountain Transit Authority*, 878 A.2d 177 (Pa. Cmwlth. Ct. 2005), and *Flaxman v. Burnett*, 574 A.2d 1061 (Pa. Super. Ct. 1990) for the same proposition. Again, however, the cases cited are not instructive. Each of these cases relied on additional evidence to either conclude that an authority was a "local agency," or to compare and contrast the types of agencies entitled to immunity under the Tort Claims Act. Put simply, Defendants have not provided this Court with any basis to conclude that immunity is owed under the Tort Claims Act.

Since no evidence was provided with Defendants' Motion to Dismiss, this Court is limited to the averments made in the Complaint when assessing whether COLTS is a "local agency" and whether immunity is owed. With that said, the averments on the face of the

---

424 Fed. App'x. 86 (3d Cir. 2011) (citing *Pension Benefit Gaur. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

[4]  At least one case this Court has identified suggests that incorporation under the MAA may be sufficient evidence to support a finding that an authority is a local agency for purposes of immunity. *See Smith v. Endless Mt. Transp. Auth.*, 878 A.2d 177, 180 (Pa. Comwth. 2005).

Complaint do not support a finding that Defendants are immune from suit.[5] For this reason, Count II of Plaintiff's Complaint will not be dismissed.

## IV. Conclusion

Defendants' Motion to Dismiss Plaintiff's Complaint will be denied in its entirety. Count I of the Complaint will not be dismissed because Plaintiff has sufficiently pled the *prima facie* case for a retaliation claim under the FMLA. Further, Count II of the Complaint will not be dismissed because Defendants have provided no basis upon which this Court could conclude that Defendants are immune from suit under the Tort Claims Act.

An appropriate order follows.

November 16, 2017  /s/ A.Richard Caputo
Date  A. Richard Caputo
  United States District Judge

---

[5] It is important to note that Defendants are free to raise the question of immunity again upon a Motion for Summary Judgment. But, at this time Defendants have not provided sufficient evidence to support a finding of immunity.